UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| BEN AFSHARI, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:18-CV-209-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION AND ORDER |
| COPPER JOHN CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Ben Afshari, proceeding *pro se*, accuses Defendant Copper John Corporation ("CJC") of peddling products that improperly incorporate his patented archery bow sight technology. Although masquerading as antitrust and trademark claims, the assertions in Plaintiff's Amended Complaint ultimately sound in patent infringement—a cause of action Afshari also expressly withdraws.[1] Because Plaintiff fails to plead cognizable claims, even under the less-stringent standards for a *pro se* litigant, the Court grants CJC's motion to dismiss (DE #19).[2]

**1.     Factual and Procedural Background**

Plaintiff began designing and producing bow sights to aid archers in 2002, patenting some of his creations and forming several companies in the intervening years to market and sell his products. DE #17 (Amended Complaint) at ¶ 9. This action focuses on Afshari's 7,503,321 patent (the "'321 patent"), which, among other things, features fluorescent, colored wiring wound tightly

---

[1] As the proceeding discussion explains, Afshari originally asserted a patent infringement claim, but withdrew it via his Amended Complaint. *See* DE #17 at § I ¶ (a); *cf.* DE #1 at ¶ 4. Plaintiff reaffirms this withdrawal in later filings. *See* DE #23 at ¶ 6.

[2] The Court also denies as moot Defendant's pending motion to dismiss the original Complaint (DE #10). The latter pleading supersedes the first filing.

1

around the sight's pin guard; this feature is evident to and attracts prospective consumers through the sight's clear packaging. *Id.* at § I and ¶ 9; *see* DE #1-2 (Exhibit B to Original Complaint: '321 Patent). Plaintiff recently entered into a licensing agreement with Buck Rub Outfitters, and that entity alerted Afshari that CJC sells products appearing to use his '321 patent; CJC is not one of Afshari's licensees. DE #17 at ¶ 9. Plaintiff asserts that CJC's products, despite including many of the same features as his own, are manufactured in China and purchased and sold at relatively lower prices. *Id.* Plaintiff also complains that, in 2010, CJC hired one of Afshari's companies' former representatives to sell its archery products to many buyers that formerly purchased from Plaintiff. *Id.* Afshari contends that, because of CJC's actions, by 2012, his last solvent company went out of business. *Id.*

Plaintiff's original Complaint asserted a patent infringement claim and alleged generally that CJC had violated antitrust laws; the substantial bulk of the pleading related to Afshari's perceived infringement issues. *See* DE #1 (Original Complaint) at ¶¶ 4–7, 13, 15–17. CJC moved to dismiss the Complaint, arguing improper venue (primarily), failure to state a claim, and insufficient service of process. DE #10. Twenty-one days after CJC filed its Rule 12(b) motion, Plaintiff filed an Amended Complaint as a matter of course. DE #17. *See* Fed. R. Civ. P. 15(a)(1)(B). The Amended Complaint explicitly states that Afshari "withdraws his complain[t] with respect to patent infringement of 321 patent against Copper John Corporation without prejudice."[3] DE #17 at § I ¶ (a). Afshari's Amended Complaint further "clarifies his complain[t] regarding violation of Antitrust laws . . . for inducement of price discrimination" and "includes additional complaint for dilution, unfair business practices and discriminatory pricing[,]"

---

[3] Plaintiff's Response to Defendant's Motion to Dismiss reiterates and confirms this sentiment: "Plaintiff simply withdrew his complaint for patent infringement without prejudice for good reason." DE #23 at ¶ 6.

collectively pursuant to 15 U.S.C. §§ 1125(a)(1)(A) (of the Lanham Act) and 13(f) (of the Robinson-Patman Act). *Id.* at § I ¶¶ (b)–(c). Afshari seeks both monetary and injunctive relief based on these claims.

Defendant moved to dismiss the Amended Complaint, reiterating its prior bases for dismissal, but devoting more argument to Afshari's failure to state plausible Lanham or Robinson-Patman Act claims.[4] DE #19. Plaintiff responded in opposition (DE #23), and Defendant replied (DE #24). Plaintiff tendered a subsequent filing titled "Response to defendant Copper John Corporation's motion to further support [] its motion to dismiss plaintiff's amended complaint." DE #25.[5] The matter is (more than) fully briefed and stands ready for disposition.

**2.    Standard of Review**

Rule 12 provides for dismissal if a complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). In deciding a Rule 12(b)(6) motion, "the complaint is viewed in the light most favorable to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs." *Nwanguma v. Trump*, 903 F.3d 604, 607 (6th Cir. 2018) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). Because Afshari is *pro se*, the Court "liberally construe[s] [his] pleading and hold[s] the complaint to a less stringent standard than a

---

[4] Given the Court's conclusion that Rule 12(b)(6) dismissal is appropriate, there is no need to discuss the service-of-process issue.

[5] Neither the Federal nor Local Rules authorize filing of a surreply (*i.e.*, a response to a movant's reply), although the Court may permit one in its discretion. *See, e.g.*, *First Tech. Capital, Inc. v. BancTec, Inc.*, No. 5:16-CV-138-REW, 2017 WL 2734716, at *1 (E.D. Ky. June 26, 2017). Afshari did not seek leave to file DE #25. However, given Afshari's *pro se* status, the Court has reviewed and considered the filing and notes that it merely summarizes Afshari's prior arguments without supplementing or altering his position.

3

similar pleading drafted by attorneys." *Chenault v. Randstad USA Mfg. and Logistics*, No. 5:18-CV-276-KKC, 2018 WL 3964811, at *1 (E.D. Ky. Aug. 17, 2018) (quoting *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999)). Nevertheless, the Court is not required to accept "a legal conclusion couched as a factual allegation[.]" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Id.* Collectively, the factual allegations must "raise a right to relief above the speculative level[,]" *id.*, and "state a claim that is plausible on its face, i.e., the court must be able to draw a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Nwanguma*, 903 F.3d at 607 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted)). This "plausibility standard" does not require a showing that success on the claims is *probable*, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

**3.     Robinson-Patman Act Claim**

The Robinson-Patman Act ("RPA") aims to prevent monopolies by prohibiting sellers from offering lower prices to favored buyers and higher prices to disfavored buyers. *See* 15 U.S.C. § 13(a) (prohibiting sellers from discriminating in price "where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce"); *see also F.T.C. v. Henry Broch & Co.*, 80 S. Ct. 1158, 1160 (1960) ("The Robinson-Patman Act was enacted in 1936 to curb and prohibit all devices by which large buyers gained discriminatory preferences over smaller ones by virtue of their greater purchasing power."). Subsection (a) of the RPA prohibits: (1) sellers "engaged in commerce" from (2) offering different prices for goods of "like grade and quality" to different purchasers where (3) "the effect of such discrimination may

4

be substantially to lessen competition" between the purchasers. 15 U.S.C. § 13(a). Relatedly, subsection (f) of the RPA—the provision Afshari invokes—specifically prohibits buyers from knowingly inducing or receiving such discriminatory pricing: "It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section." 15 U.S.C. § 13(f).[6] However, the simple fact that one buyer pays a higher price for goods than another pays for similar goods is not actionable; by its terms, subsection (f) only prohibits price differentials between purchasers as they relate to the seller's violative conduct. *See Great Atl. & Pac. Tea Co. v. F.T.C.*, 99 S. Ct. 925, 931 (1979) ("Under the plain meaning of § 2(f) . . . a buyer cannot be liable if a prima facie case could not be established against a seller[.]"). That is, "buyer liability under § 2(f) is dependent on seller liability under § 2(a)." *Id.*; *accord Automatic Canteen Co. of America v. FTC,* 73 S. Ct. 1017, 1026 (1953). The prima facie elements are thus the same for the two subsections, with the additional requirement that subsection (f) liability attaches only when the buyer receives prices it *knows* the seller discriminatorily offered. *Automatic Canteen*, 73 S. Ct. at 1026.

As the basis for his RPA claim, Afshari argues that CJC is knowingly receiving a lower price for its alleged use of Afshari's bow sight technology than Afshari's licensees pay—that is, CJC is paying nothing, as it is not actually licensing the technology. *See* DE #17 ¶ 9 ("It is price discrimination to all the above companies [Afshari's licensees] and ultimately to plaintiff if [CJC] induces receiving the same technology for $0.0.). Afshari further conclusorily alleges that "Defendant has been and is inducing an unfair price= $0 for using plaintiff's technology, while others pay or paid." DE #17 ¶ 6. These allegations fundamentally misapprehend the § 13(f) liability

---

[6] Originally § 2(f) of the Clayton Act, as amended by Robinson-Patman Price Discrimination Act, 15 U.S.C. § 13(f). Cases synonymously refer to § 2(f) and § 13(f) in citing this provision.

standard. As previously noted, buyer liability under this subsection is dependent on the plaintiff's ability to prove a prima facie case against a seller. *See Great Atl. & Pac. Tea Co.*, 99 S. Ct. at 931. Significantly, Afshari has not alleged that any seller is offering discriminatory prices for CJC to receive; indeed, there is not even a seller here, as Afshari is not licensing his technology to CJC at all. A fair reading of Afshari's RPA allegations reveals that his sole real contention is that CJC uses his patented technology without licensing it from him. Regardless of how Afshari labels it, this is an attempt at a patent infringement claim—which Afshari expressly withdrew—and not an antitrust claim. Afshari presents no facts that could plausibly satisfy the § 13(a) standards predicating § 13(f) liability. The Court is not free to rewrite Afshari's Amended Complaint, the operative pleading in this case, and include claims that he explicitly declines to present.[7] Afshari fails to state a RPA claim, under even the most liberal of review standards.

### 4. Lanham Act Claim

Equally unsuccessfully, Afshari attempts to recast his patent infringement dispute as a trademark claim under § 1125. However, the Amended Complaint is devoid of factual allegations to support any claim under this section and consists merely of legal conclusions scattered throughout, summarily stating that CJC is guilty of "dilution[,]" "unfair business practices[,]" and "unfair competition[.]" DE #17 at § I(c), ¶¶ 5, 9.[8] His sole allegation is that "Defendant purchased infringing products from China that are almost [an] exact copy of plaintiff's products[.]" DE #17 at ¶ 5. Afshari lists four features of his sights, and he maintains that the products CJC sells "all

---

[7] The Court expresses no opinion on the potential validity of (or propriety of venue as to) any patent infringement claim Afshari might have brought. It may only decide disputes squarely before it, and—by his own admission, in multiple filings—Afshari does not assert a patent infringement claim in this case.

[8] Afshari also cites subsection (a)(1)(A) (*see* DE #17 at ¶¶ 5, 6). Given the variety of legal labels and lack of accompanying factual allegations, it is impossible to determine the precise alleged basis for any trademark claim.

incorporated these features . . . but much cheaper[.]" *Id.* at ¶ 9. The central feature of Afshari's '321 patent is its fluorescent-colored wiring, visible through the sight's packaging. *Id.* ("The intentional design was to create contrast between a dark pin guard and fl[u]orescent wire and to capture the consumer attention thru their clear packaging."). Although unclear, the Court assumes that this form of trade dress is what he seeks to protect via the Lanham Act.[9]

Beyond Plaintiff's opinion that CJC's product features resemble his own, Afshari does not allege that the supposed similarity is likely to confuse customers as to the seller, hinders his ability to identify or distinguish his own products, or creates a false and damaging association between his and CJC's goods. Nor does Plaintiff identify any facts that would support such allegations.[10] Even under the Court's liberal construction of *pro se* pleadings, it "cannot rewrite a complaint to include claims that were never presented, 'conjure up unpled allegations' or 'create a claim.'" *Schomaker v. Gen. Motors, Inc.*, No. 1:10-CV-764, 2012 WL 691731, at *2 (W.D. Mich. Jan. 18, 2012), *report and recommendation adopted sub nom. Schomaker v. Gen. Motors Co.*, No. 1:10-CV-764, 2012 WL 691641 (W.D. Mich. Mar. 1, 2012) (quoting *Rogers v. Detroit Police Dept.*,

---

[9] In briefing on the motion to dismiss, Afshari notes that he "owns all of his patents, distinctive trade dress and [f]unctional designs[.]" DE #23 at ¶ 7(a). The Court is unconfident that Afshari's trade dress is even protectable, given its stated functionality and Afshari's accompanying utility patent. *See Fuji Kogyo Co., Ltd. V. Pacific Bay Intern., Inc.*, 461 F.3d 675, 683 (6th Cir. 2006) ("If a product's design is functional, that design cannot serve as a trademark."); *see also* 15 U.S.C. § 1125(a)(3). However, the Court need not decide this issue, as Afshari pleads insufficient facts to state a cognizable trademark claim either way.

[10] In ruling on a motion to dismiss, "the Court is confined to consider only the Complaint, documents referenced in the Complaint, and facts of which the Court may take judicial notice." *Lossia v. JPMorgan Chase Bank, Nat. Ass'n*, No. 2:14–cv–11361, 2014 WL 4064258, at *4 (E.D. Mich. Aug. 18, 2014). Afshari attaches to his response to Defendant's motion an affidavit executed by a representative of Buck Rub Outfitters, one of Afshari's licensees, that is not mentioned or referenced in the Amended Complaint. DE #23-1 (Affidavit of Greg Kazmierski). Accordingly, "the Court declines to consider this affidavit in conjunction with this Motion to Dismiss pursuant to 12(b)(6) as doing so would have the effect of converting the instant Motion to Dismiss into a Motion for Summary Judgment." *Ypsilanti Cmty. Utilities Auth. v. MeadWestvaco Air Sys., LLC*, No. 07-CV-15280, 2008 WL 2610273, at *3 (E.D. Mich. June 30, 2008).

595 F. Supp. 2d 757, 766 (E.D. Mich. 2009)). Nor should courts "explore exhaustively all potential claims of a pro se plaintiff" or "seek[] out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Afshari's skeletal and conclusory trademark allegations—as well as his failure to specify what exactly he actually deems protected under the Act—collectively warrant dismissal. Again, this claim appears to be, at its core, a patent infringement accusation.

**5.     Conclusion**

Plaintiff does not provide "more than labels and conclusions, and a formulaic recitation of the elements" of his purported causes of action. *Twombly*, 127 S. Ct. at 1965. Moreover, his chosen labels do not match his allegations, which continuously reference the underlying patent infringement dispute that he repeatedly (and unconvincingly) insists is not the basis of these claims. Despite the Court's liberal reading of Plaintiff's allegations, they are insufficient to state claims upon which the Court can grant relief.[11]

Accordingly, the Court **ORDERS** as follows:

1. The Court **GRANTS** Defendant's Motion to Dismiss the Amended Complaint (DE #19);
2. The Court **DENIES** as moot Defendant's Motion to Dismiss the original Complaint (DE #10); and
3. The Court **DISMISSES** this action in its entirety. A Judgment to this effect will follow.

This the 24th day of January, 2019.



Signed By:
*Robert E. Wier*
**United States District Judge**

---

[11] Defendant cursorily requests attorney's fees in its dismissal motion; given Plaintiff's *pro se* status and the informality and brevity of the request, the Court declines to award attorney's fees at this juncture.